IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF GEORGIA

AUGUSTA DIVISION

| | | |
|---|---|---|
| MATTHEW WARD TIMMERMAN, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | CV 119-046 |
| | ) | (Formerly CR 117-082) |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Respondent. | ) | |

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

Petitioner Matthew Timmerman filed a motion under 28 U.S.C. § 2255 to vacate, set aside, or correct his sentence. The Court **REPORTS** and **RECOMMENDS** the § 2255 motion be **DENIED**, this civil action be **CLOSED**, and a final judgment be **ENTERED** in favor of Respondent.

**I.    BACKGROUND**

    **A.    Indictment**

On December 6, 2017, the grand jury in the Southern District of Georgia charged Petitioner with one count of possession with intent to distribute a controlled substance in violation of 21 U.S.C. § 841. United States v. Timmerman, CR 117-082, doc. no. 1 (S.D. Ga. Dec. 6, 2016) (hereinafter "CR 117-082"). The charge carried a maximum term of imprisonment of twenty years. CR 117-082, doc. no. 2. The Court appointed attorney Melissa C. Bray to represent Petitioner. See id., doc. no. 6.

### B.     Agreement to Plead Guilty

On March 8, 2018, Petitioner waived his right to trial by jury and pleaded guilty to the sole count of the indictment. Id., doc. nos. 20-22. In exchange for the guilty plea, the government agreed to (1) not object to a recommendation for a two-point acceptance of responsibility reduction; (2) move for an additional one-point reduction under the Sentencing Guidelines if Petitioner's offense level was sixteen or greater prior to the acceptance of responsibility reduction; and (3) consider filing a motion, based on any "substantial assistance" provided by Petitioner, for downward departure under U.S.S.G. § 5K1.1 or requesting a reduction of Petitioner's sentence under Fed. R. Crim. P. 35. Id., doc. no. 22, pp. 3-4. The parties also stipulated the offense involved at least twenty but fewer than forty grams of heroin for purposes of U.S.S.G. § 2D1.1 and other specific offense characteristics pursuant to U.S.S.G. § 2D1.1(b) do not apply in this case. Id.

Petitioner's plea agreement contained the following factual basis for his guilty plea:

> On or about May 12, 2017, in Richmond County, within the Southern District of Georgia, the defendant herein: MATTHEW TIMMERMAN, did knowingly and intentionally possess with intent to distribute heroin, a Schedule I controlled substance, in violation of Title 21, United States Code, Section 841(a)(1).

Id. at 1-2.

By signing the Plea Agreement, Petitioner "entirely waive[d] his right to a direct appeal of his conviction and sentence on any ground" unless the Court (1) sentenced him above the statutory maximum, (2) sentenced him above the advisory Sentencing Guidelines range, or (3) the government appealed the sentence. Id. at 5. Absent one of those three conditions, "[Petitioner] explicitly and irrevocably instruct[ed] his attorney not to file an appeal." Id. Petitioner also "entirely waive[d] his right to collaterally attack his conviction

and sentence on any ground and by any method," except based on a claim of ineffective assistance of counsel. Id. at 5-6. By signing the Plea Agreement, Petitioner additionally attested he "read and carefully reviewed this agreement" with Ms. Bray and "that his attorney has represented him faithfully, skillfully, and diligently, and [Petitioner] is completely satisfied with the legal advice given and the work performed by his attorney." Id. at 7, 9.

During the change of plea hearing, Chief United States District Judge J. Randal Hall queried Petitioner as to his competence to proceed and found Petitioner was competent to enter a guilty plea if he so desired. Id., doc. no. 29, p. 16. Petitioner testified under oath he had enough time to discuss his case with Ms. Bray and that he was entirely satisfied with counsel's preparation and handling of the case. Id. at 6, 8. Judge Hall reviewed the charge to which Petitioner was pleading guilty and the potential prison term of not more than twenty years. Id. at 9-10, 13.

Judge Hall explained the rights Petitioner would be waiving by pleading guilty, and Petitioner affirmed he clearly understood those rights. Among the list of rights explained, Judge Hall reviewed the right to trial by jury, the presumption of innocence, the government's burden to prove guilt beyond a reasonable doubt, the right to present and cross-examine witnesses, and the right to remain silent. Id. at 6-8. In addition, Judge Hall reviewed the appeal and collateral attack waivers and their limited exceptions, as well as confirmed that, other than the promises the government made in the plea agreement, no one had made him any promises in order to get him to plead guilty. Id. at 9-10.

Next, Judge Hall heard a factual basis for the guilty plea from Richmond County Sheriff's Office Investigator Calvin Swann. Id. at 13-15. Investigator Swann testified on

May 12, 2017, he and other members of the Richmond County Sheriff's Office Narcotics Division executed a search warrant at 2155 Richmond Avenue in Augusta, Georgia. Id. at 14. Investigator Swann identified Petitioner and three others at the residence. Id. at 15. Investigators found approximately 29.9 grams of heroin in Petitioner's pocket. Id. Petitioner admitted to Investigator Swann he was the owner of the heroin. Id. Investigator Swann testified, in his experience, an ounce of heroin is a distribution quantity of heroin. Id.

Petitioner stated to Judge Hall he had no disagreement with anything Investigator Swann recounted. Id. at 16. Petitioner testified he was guilty of, and wanted to plead guilty to, Count One of the indictment. Id.

### C. Sentencing

The United States Probation Office prepared a Presentence Investigation Report ("PSI") which set Petitioner's Total Offense Level at twenty-nine, Criminal History Category at VI, and Guidelines imprisonment range at 151 to 188 months. PSI ¶¶ 22, 37, 65. Neither Petitioner nor the government raised objections to the PSI. PSI Addendum.

The PSI set Petitioner's base offense level for Count One at sixteen, pursuant to U.S.S.G. § 2D1.1(a)(12). PSI ¶ 13. Petitioner's offense level for Count One increased to thirty-two after an enhancement for having two or more prior convictions for crimes of violence or controlled substance offenses, pursuant to U.S.S.G. § 4B1.1(b)(3). PSI ¶ 19. This offense level decreased three points for acceptance of responsibility resulting in a total offense level of twenty-nine. PSI ¶¶ 20-22.

Petitioner received nine criminal history points for adult felony convictions pursuant to U.S.S.G. § 4A1.1(a): (1) three points for a 2001 felony conviction for possession of clonazepam; (2) three points for a 2003 felony conviction for possession of

4

methamphetamine with intent to distribute; and (3) three points for 2005 felony convictions for trafficking methamphetamine and possession of controlled substances with intent to distribute. PSI ¶¶ 28-30. Petitioner received one point for 2011 adult misdemeanor convictions for possession of heroin, amphetamine, hydromorphone, and oxycodone pursuant to U.S.S.G. § 4A1.1(c). PSI ¶ 31. Petitioner received two additional points for committing the instant offense while under a criminal justice sentence. PSI ¶ 35. Accordingly, Petitioner's criminal history score of twelve established a criminal history category of V. PSI ¶ 36. Petitioner's criminal history category was then increased to VI based on his career offender status for prior convictions for (1) possession of methamphetamine with intent to distribute and (2) trafficking methamphetamine pursuant to U.S.S.G. § 4B1.1(b). PSI ¶ 37. Based on a total offense level of twenty-nine and a criminal history category of VI, Petitioner's guideline imprisonment range was between 151 and 188 months. PSI ¶ 65.

At the sentencing hearing, Ms. Bray requested a variance regarding Petitioner's career offender level. CR 117-082, doc. no. 30, p. 5. In support of this request, Ms. Bray outlined Petitioner's long history of drug abuse and addiction. Id. at 4-5. She noted Petitioner had never been armed in any of his past arrests and had never been convicted of a firearms charge. Id. at 5. Petitioner's mother, Judy Farmer, then made a statement on Petitioner's behalf. She spoke to Petitioner's character as a non-violent individual and how his upbringing led him to drug addiction. Id. at 7. Petitioner then made a statement on his own behalf, speaking to his long history of addiction and taking responsibility for his actions. Id. at 8-9. The government opposed a variance in Petitioner's career offender level, noting Petitioner's long criminal history, and argued Petitioner's previous short sentences had been

5

ineffective in his rehabilitation. Id. at 10. Judge Hall sentenced Petitioner to 151 months incarceration and three years of supervised release. Id. at 11. In keeping with the terms of the plea agreement, Petitioner did not file a direct appeal.

### D. § 2255 Proceedings

Petitioner then timely filed the instant § 2255 motion to vacate, set aside, or correct his sentence, raising the following claims:

1. Petitioner was charged and convicted based on evidence seized during an unconstitutional search and seizure.

2. Counsel rendered ineffective assistance pretrial when she did not challenge the execution of the search warrant and request an evidentiary hearing concerning the allegedly unconstitutional search and seizure.

(See generally doc. no. 1.)

## II. DISCUSSION

### A. No Evidentiary Hearing Required

Section 2255 does not require that the Court hold an evidentiary hearing if "the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief . . . ." Winthrop-Redin v. United States, 767 F.3d 1210, 1216 (11th Cir. 2014) (quoting 28 U.S.C. § 2255(b)). "A hearing is not required on patently frivolous claims or those which are based upon unsupported generalizations. Nor is a hearing required where the petitioner's allegations are affirmatively contradicted in the record." Holmes v. United States, 876 F.2d 1545, 1553 (11th Cir. 1989) (citation omitted). Moreover, a petitioner is not entitled to an evidentiary hearing where he asserts "merely conclusory allegations unsupported by specifics or contentions that in the face of the record are wholly incredible."

Tejada v. Dugger, 941 F.2d 1551, 1559 (11th Cir. 1991) (citation omitted); see also Lynn v. United States, 365 F.3d 1225, 1238-39 (11th Cir. 2004).

While ineffective assistance of counsel claims often require a hearing for development of an adequate record, an evidentiary hearing is not required every time such a claim is raised. Rosin v. United States, 786 F.3d 873, 878-79 (11th Cir. 2015); Vick v. United States, 730 F.2d 707, 708 (11th Cir. 1984). For example, because the deficient performance prong of ineffective assistance is judged by "whether counsels' representation fell below an objective standard of reasonableness, not whether counsel could provide some explanation for their actions," an evidentiary hearing exploring strategic decisions is not automatically required. Thomas v. United States, 596 F. App'x 808, 810 (11th Cir. 2015). When the Court "can conceive of a reasonable motivation for counsel's actions, [it] will deny a claim of ineffective assistance without an evidentiary hearing." Gordon v. United States, 518 F.3d 1291, 1302 (11th Cir. 2008). Because Petitioner's claims lack merit as a matter of law, or are otherwise affirmatively contradicted by the record, no evidentiary hearing is necessary.

### B. Petitioner is Not Entitled to Relief on His Ground One Claim Because Suppression of Evidence Seized During Execution of the Search Warrant Was Not Warranted

Petitioner claims the evidence that led to his conviction was obtained during an illegal search of his home and, therefore, should have been excluded. (Doc. no. 1. pp. 7-9.) Petitioner argues Richmond County Sheriff's Office investigators failed to knock and announce their entry into his house prior to execution of the search warrant. (Id.) Furthermore, Petitioner contends he would have been able to dispose of the narcotics if

7

investigators had knocked on his door before entering his home and would not have been charged with the crime. (Id.)

Generally, law enforcement officials are required to announce their presence and allow residents to open the door to their house prior to execution of a search warrant. Hudson v. Michigan, 547 U.S. 586, 589 (2006). Nevertheless, when there is a violation of the knock and announce rule, the violation does not warrant suppression of evidence seized during execution of the search warrant. Id. at 594 ("[T]he knock and announce rule has never protected, however, one's interest in preventing the government from seeing or taking evidence described in a warrant.")

Petitioner claims investigators violated the knock and announce rule by failing to knock on his door before entering his home to execute the warrant. (Doc. no. 1. pp. 7-9.) However, even if there was a knock and announce violation, as Petitioner claims, the violation would not warrant suppression of the evidence seized during execution of the search warrant. Hudson, 547 U.S. at 594. Therefore, Petitioner is not entitled to relief on his Ground One claim.

### C. Under Strickland v. Washington, Petitioner Bears a Heavy Burden on an Ineffective Assistance of Counsel Claim

Ineffective assistance of counsel claims are subject to the two-part test enunciated in Strickland v. Washington, 466 U.S. 668 (1984). See Massaro v. United States, 538 U.S. 500, 505 (2003); United States v. Armstrong, 546 F. App'x 936, 940 (11th Cir. 2013). Under the first prong, Petitioner must show that "counsel's representation fell below an objective standard of reasonableness." Strickland, 466 U.S. at 688. In this regard, "[a] petitioner must overcome a strong presumption of competence, and the court must give significant deference

to the attorney's decisions." Hagins v. United States, 267 F.3d 1202, 1204-05 (11th Cir. 2001).

Strategic decisions are entitled to a "heavy measure of deference." Strickland, 466 U.S. at 691. Indeed, "strategic choices are 'virtually unchallengeable.'" Provenzano v. Singletary, 148 F.3d 1327, 1332 (11th Cir. 1998) (citing Strickland, 466 U.S. at 690). "[A] court should be highly deferential to those choices made by defense counsel in the conduct of a trial that are arguably dictated by a reasonable trial strategy." Devier v. Zant, 3 F.3d 1445, 1450 (11th Cir. 1993). To show that an attorney's choice of strategy is unreasonable, a petitioner must show that no competent counsel would have made such a choice. Strickland, 466 U.S. at 690.

Thus, a petitioner "must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" Id. "Given the strong presumption in favor of competence, the petitioner's burden of persuasion – though the presumption is not insurmountable – is a heavy one." Fugate v. Head, 261 F.3d 1206, 1217 (11th Cir. 2001) (citation omitted). "The test has nothing to do with what the best lawyers would have done. Nor is the test even what most good lawyers would have done. We ask only whether some reasonable lawyer . . . could have acted, in the circumstances, as defense counsel acted . . . ." Ward v. Hall, 592 F.3d 1144, 1164 (11th Cir. 2010) (citing Waters v. Thomas, 46 F.3d 1506, 1512 (11th Cir. 1995)).

A court, however, "need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies . . . . If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed."

Strickland, 466 U.S. at 697; see Brooks v. Comm'r, Ala. Dep't of Corr., 719 F.3d 1292, 1301 (11th Cir. 2013). Under the prejudice prong of Strickland, a petitioner must show "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Strickland, 466 U.S. at 694.

A petitioner must affirmatively prove prejudice that would undermine the results of the proceedings because "attorney errors come in an infinite variety and are as likely to be utterly harmless in a particular case as they are to be prejudicial. That the errors had some conceivable effect on the outcome of the proceeding is insufficient to show prejudice." Butcher v. United States, 368 F.3d 1290, 1293 (11th Cir. 2004) (citations and internal quotations omitted). Indeed, the Court must examine the entirety of counsel's performance and the effect of such "in light of the record as a whole to determine whether it was reasonably probable that the outcome would have been different." Lancaster v. Newsome, 880 F.2d 362, 375 (11th Cir. 1989). Furthermore, "where the alleged error of counsel is a failure to investigate or discovery potentially exculpatory evidence, the determination whether the error 'prejudiced' the defendant by causing him to plead guilty rather than go to trial will depend on the likelihood that discovery of the evidence would have led counsel to change his recommendation as to the plea." Hill v. Lockhart, 474 U.S. 52, 60 (1985).

Moreover, in the context of a guilty plea, "the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Id. at 59; Stephens v. Sec'y, Fla. Dep't of Corr., 678 F.3d 1219, 1225 (11th Cir. 2012), *cert. denied*, 568 U.S. 966 (2012). In assessing whether a petitioner has met this standard, the Supreme Court has emphasized the "fundamental

10

interest in the finality of guilty pleas." Hill, 474 U.S. at 58. Thus, a petitioner must prove "serious derelictions" in counsel's advice regarding the plea. Stano v. Dugger, 921 F.2d 1125, 1150-51 (11th Cir. 1991) (*en banc*) (citations omitted). Therefore, Petitioner must show both that counsel's representation fell below an objective standard of reasonableness, *and* that there is a reasonable probability that but for counsel's errors, he would have insisted on going to trial. Hill, 474 U.S. at 56-59.

### D. Petitioner Is Not Entitled to Relief on the Pretrial Ineffective Assistance Claim in Ground Two

Petitioner asserts Ms. Bray provided ineffective assistance in the pretrial phase of the case when she failed to request an evidentiary hearing concerning the alleged unconstitutional search and seizure. The claim is barred by the entry of a valid guilty plea, and in any event is devoid of merit.

#### 1. Entry of a Knowing and Voluntary Guilty Plea Bars Petitioner's Ground Two Claim

Once a guilty plea becomes final, unless the record demonstrates that the sentencing court lacked the power to enter the conviction or impose the sentence, a petitioner may only challenge the knowing, voluntary nature of the plea. United States v. Broce, 488 U.S. 563, 569 (1989). In conducting its analysis, the Court starts with the proposition that a trial court may not accept a guilty plea without an affirmative showing on the record that the plea was intelligent and voluntary. Boykin v. Alabama, 395 U.S. 238, 242-43 (1969). The Eleventh Circuit has described the requirements for a valid guilty plea as follows: "The Fourteenth Amendment Due Process Clause requires that a plea of guilty be knowingly and voluntarily entered because it involves a waiver of a number of the defendant's constitutional rights. A plea of guilty cannot support a judgment of guilt unless it was voluntary in a constitutional

11

sense." United States v. Brown, 117 F.3d 471, 476 (11th Cir. 1997). A guilty plea may be involuntary in a constitutional sense if a defendant is coerced into his plea, if a defendant does not understand the nature of the constitutional protections he is waiving, or "if a defendant has such an incomplete understanding of the charge that his plea cannot stand as an intelligent admission of guilt." Id. Thus, a defendant must receive "real notice of the true nature of the charged crime." Id.

The Eleventh Circuit has further explained that, for a guilty plea to be knowingly and voluntarily made, the court accepting the guilty plea must "specifically address three 'core principles,' ensuring that a defendant (1) enters his guilty plea free from coercion, (2) understands the nature of the charges, and (3) understands the consequences of his plea." United States v. Moriarty, 429 F.3d 1012, 1019 (11th Cir. 2005) (*per curiam*) (citations omitted). In addition, "a defendant who seeks reversal of his conviction after a guilty plea . . . must show a reasonable probability that, but for the error [under Rule 11 of the court accepting the guilty plea], he would not have entered the plea." Id. at 1020 (quoting United States v. Dominguez Benitez, 542 U.S. 74, 83 (2004)).

Judge Hall informed Petitioner in clear terms of the charge to which he was pleading guilty, and Petitioner testified he understood the charge. CR 117-082, doc. no. 29, pp. 5-6, 16. Judge Hall also provided a detailed explanation of the rights Petitioner would forfeit by pleading guilty, and Petitioner affirmed he understood his decision to plead guilty would result in a waiver of these rights. Id. at 6-8. Petitioner testified that other than the promises the government made in the Plea Agreement, no one had made promises to get him to plead guilty, and Judge Hall confirmed Petitioner's decision to plead guilty was not the result of force, pressure, threats or promises other than those in the plea agreement. Id. at 10, 16-17.

Additionally, Judge Hall informed Petitioner of the possible penalty he faced upon conviction. In particular, Judge Hall explained the maximum twenty-year prison term for being convicted of the possession with intent to distribute charge. Id. at 10. Finally, Petitioner also testified he had enough time to discuss the case with Ms. Bray and was satisfied with the help he had received from her. Id. at 6; see also id., doc. no. 22, p. 9. ("I have read and carefully reviewed this agreement with my attorney.").

Thus, Judge Hall's thorough plea colloquy ensured Petitioner understood both the nature of the charge and the consequences of his guilty plea, and that Petitioner was not coerced into pleading guilty. See Moriarty, 429 F.3d at 1019. Petitioner has not argued, let alone shown a reasonable probability that but for any alleged error at the Rule 11 proceeding he would not have entered his guilty plea. See Dominguez Benitez, 542 U.S. at 83. Accordingly, Petitioner cannot validly claim that his guilty plea was unknowingly or involuntarily entered or that there was no factual basis established for the guilty plea. Such assertions are contradicted by the record of the Rule 11 hearing and Petitioner's sworn testimony at that proceeding, as well as at the subsequent sentencing. "[S]olemn declarations in open court carry a strong presumption of verity" and "constitute a formidable barrier in any subsequent collateral proceedings." Blackledge v. Allison, 431 U.S. 63, 74 (1977); see also United States v. Rogers, 848 F.2d 166, 168 (11th Cir. 1988) ("[W]hen a defendant makes statements under oath at a plea colloquy, he bears a heavy burden to show his statements were false."); United States v. Stitzer, 785 F.2d 1506, 1514 n.4 (11th Cir. 1986) (noting that "if the Rule 11 plea-taking procedure is careful and detailed, the defendant will not later be heard to contend that he swore falsely"). As Petitioner's plea was knowing and

voluntary, his claims in Ground Two are barred.

### 2. Even if the Claim Was Not Barred by Entry of a Valid Guilty Plea, the Claim Is Without Merit

In Ground Two, Petitioner argues Ms. Bray was ineffective because she failed to request an evidentiary hearing concerning the alleged unconstitutional search and seizure. (Doc. no. 1, p. 10.) Petitioner argues, if a hearing was held, he would have been able to present evidence that investigators would not have been able to seize any narcotics from his home but for the illegal means of their search. (Id.)

Ms. Bray was not ineffective for not seeking to exclude the evidence seized during execution of the search warrant or requesting an evidentiary hearing on the issue. Petitioner cannot show prejudice for Ms. Bray's decision not to request an evidentiary hearing. As discussed above, a request for an evidentiary hearing would have been meritless because violation of the knock and announce rule does not warrant suppression of evidence. Hudson, 547 U.S. at 584. "A lawyer's failure to preserve a meritless issue plainly cannot prejudice a client." United States v. Winfield, 960 F.2d 970, 974 (11th Cir. 1992). Thus, Petitioner was not prejudiced by Ms. Bray deciding not to raise the meritless issue. Accordingly, Petitioner's Ground II claim fails.

### III. CONCLUSION

For the reasons set forth above, the Court **REPORTS** and **RECOMMENDS** the § 2255 motion be **DENIED**, this civil action be **CLOSED**, and a final judgment be

**ENTERED** in favor of Respondent.

SO REPORTED and RECOMMENDED this 25th day of July, 2019, at Augusta, Georgia.

_____
BRIAN K. EPPS
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA